```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF GEORGIA
                          AUGUSTA DIVISION


United States of America,      )
                               )
          Plaintiff,           )
                               )
     vs.                       )    Case No. 1:24CR68
                               )
Dantavion Jones,               )
                               )
          Defendant.           )
_____)


   INITIAL APPEARANCE, ARRAIGNMENT, AND PLEA TO AN INFORMATION
          BEFORE THE HONORABLE DUDLEY H. BOWEN, JR.
              UNITED STATES DISTRICT COURT JUDGE
             THURSDAY, DECEMBER 19, 2024; 3:45 P.M.


FOR THE PLAINTIFF:

     Kelsey Lane Scanlon, Esquire
     U.S. Attorney's Office
     Post Office Box 2017
     Augusta, Georgia 30903
     (706)724-0517

FOR THE DEFENDANT:

     Mark McNair Shaefer, Esquire
     Fulcher Hagler LLP
     One 10th Street, Suite 700
     Augusta, Georgia 30901
     (706)828-2620

OFFICIAL COURT REPORTER:

     Lisa H. Davenport, RPR, FCRR
     Post Office Box 5485
     Aiken, South Carolina 29804
     (706)823-6468
```

INDEX

| WITNESS | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|
| Farrah Rajabi, | | | | |
| By Mrs. Scanlon | 15 | | | |
| By Mr. Shaefer | | 19 | | |

EXHIBITS

| NO. | IDENTIFICATION | EVD. |
|---|---|---|

(None offered)

1          (Call to Order at 3:45 p.m.)

2          THE CLERK:  Case No. 1:24CR68, the United States of

3   America v Dantavion Jones, is called for initial appearance,

4   arraignment, and plea to a felony information.  Representing

5   the government, Kelsey Scanlon.  Representing the defendant,

6   Mark Shaefer.

7          THE COURT:  You are Dantavion Jones.  Is that correct?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  All right.  Mr. Jones, do try to speak up

10  for me.  You can pull that microphone maybe a little closer.  I

11  am old and deaf so I want to be able to hear everything you

12  say.  Mr. Jones, in order to make sure that I am getting the

13  most reliable information under the circumstances, I am going

14  to place you under oath.

15         (Dantavion Jones is duly sworn.)

16         THE COURT:  You may take your hand down.  How old are

17  you, Mr. Jones?

18         THE DEFENDANT:  Thirty -- I was born in '91.  I always

19  get it wrong.  33.

20         THE COURT:  Thirty-three.  How far did you go in

21  school?

22         THE DEFENDANT:  Completed high school.

23         THE COURT:  I think this may help.  All right.  So you

24  got a high school diploma?

25         THE DEFENDANT:  Yes, sir.

1          THE COURT:  And what high school was that from?

2          THE DEFENDANT:  Burke County High School in

3    Waynesboro, Georgia.

4          THE COURT:  All right.  Now you're currently working

5    with Quality Plus Services.  Is that right?

6          THE DEFENDANT:  Yes, sir.

7          THE COURT:  What do you do with Quality Plus?

8          THE DEFENDANT:  I'm an electrician.

9          THE COURT:  I see.  And how far along are you in the

10   process of getting certified or union membership?

11         THE DEFENDANT:  I was waiting for this to transpire

12   and then I was planning on starting -- getting ready to go to

13   trade school.  I have already spoken with the recruiter for the

14   trade school and it's just whenever I pay the fine, I pay the

15   entrance fee.  I can start immediately and that's a 125-dollar

16   course.

17         THE COURT:  Have you done much actual welding?  I'm

18   sorry.  Electrical work.

19         THE DEFENDANT:  Yes, sir.

20         THE COURT:  And at one time you worked for John Deere.

21   Is that right?

22         THE DEFENDANT:  Yes, sir.

23         THE COURT:  And that was between March of '24 and

24   August of '24.  Is that right?

25         THE DEFENDANT:  Yes, sir.

1    THE COURT:  When were you employed by the Sheriff's

2  Department?

3    THE DEFENDANT:  From February of '17 until February of

4  '24.

5    THE COURT:  Have you had any other jobs that I have

6  not mentioned here?

7    THE DEFENDANT:  Before the Sheriff's Office I worked

8  with the Department of Corrections for two years.  So from 2015

9  to February 2017 I was at the Department of Corrections.

10  Before that I was a forklift operator.  I did hospital

11  security, auto parts delivery driver, and a machine operator.

12    THE COURT:  During the past 24 hours have you had any

13  drugs, medicines, pills or alcohol of any kind?

14    THE DEFENDANT:  No, sir.

15    THE COURT:  Now, Mr. Shaefer, have you in your

16  interviews or conferences discovered any reason to doubt this

17  man's competence?

18    MR. SHAEFER:  No, sir, Your Honor.

19    THE COURT:  I have no reason to doubt the competence

20  of Dantavion Jones.  He is alert.  He is attentive to the

21  proceedings.  He is lucid in every respect that I can observe

22  and responsive to my questions.  Accordingly, I find him to be

23  competent to enter a plea if that's what he wants to do.  He

24  may be a little nervous, but that's quite common under the

25  circumstances.

1          Mr. Jones, have you had enough time to discuss this
2     case and prepare for it with your lawyer?
3          THE DEFENDANT:  Yes, sir.
4          THE COURT:  Are you entirely satisfied with your
5     lawyer's preparation and his handling of your case?
6          THE DEFENDANT:  Yes, sir.
7          THE COURT:  Mrs. Akins, do I have the Waiver of
8     Indictment here?
9          THE CLERK:  I have it here, sir.
10          THE COURT:  Mr. Jones, this case will proceed by way
11     of what we call an "information".  Most cases in the federal
12     court originate under an indictment.  Have you heard all about
13     this from your lawyer?
14          THE DEFENDANT:  Yes, sir.
15          THE COURT:  Well, I'll make it brief then.  The
16     Constitution provides that if you're charged with a serious
17     crime you have the right to have the matter considered by a
18     grand jury and a grand jury's consideration is conceived,
19     generally, as a citizen's protection so that you cannot be
20     accused of a serious crime as a result of arbitrary or
21     capricious action by a prosecutor.  I want you to understand
22     that you have the right to have this matter considered by the
23     grand jury.
24          You also have the right if you want to waive
25     consideration by the grand jury and to have the matter proceed

1  by an accusation or what we call an "information" filed by the

2  United States Attorney.  Do you understand all of that?

3              THE DEFENDANT:  Yes, sir.

4              THE COURT:  Now have you decided whether or not you

5  wish to waive this right to have the matter considered by the

6  grand jury?

7              THE DEFENDANT:  Yes, sir.

8              THE COURT:  And what do you want to do?

9              THE DEFENDANT:  I am going to have it waived.

10             THE COURT:  So you're consenting for the matter to

11  proceed by way of the United States Attorney's accusation.  Is

12  that correct?

13             THE DEFENDANT:  Yes, sir.

14             THE COURT:  All right.  Well, I'll approve the waiver

15  and let's get some signatures on that, Mrs. Akins.

16             THE CLERK:  The Waiver of Indictment has been signed.

17             THE COURT:  Thank you.  Let it be filed.  Okay.

18             Mr. Jones, I have before me the Information which is

19  pending now in your case.  It is filed and by that waiver it's,

20  so to speak, activated, and I am going to summarize it.

21  Basically, the United States Attorney has charged that at all

22  times relevant to this Information you were a sworn law

23  enforcement agent or officer employed as a deputy in the

24  Richmond County Sheriff's Office and there was -- well, we'll

25  get to it.

1           You want to give me a name, Mrs. Scanlon -- victim

2  one?

3           MRS. SCANLON:  Naytrone Adams.

4           THE COURT:  All right.  Adams.

5           MRS. SCANLON:  A-D-A-M-S.

6           THE COURT:  Okay.  Adams was an inmate at the Richmond

7  County Jail.  The Information charges that you, Dantavion

8  Jones, while acting as a deputy under color of law did

9  willfully deprive Adams of a right secured and protected to him

10 by the Constitution and laws of the United States to be a

11 pretrial detainee free from the use of unreasonable force by a

12 law enforcement officer.  Specifically, the allegation and

13 accusation is that you failed to intervene and attempt to

14 intervene despite having the opportunity and ability to do so

15 when another officer punched or struck Mr. Adams several times,

16 put Mr. Adams in a chokehold without any legal justification

17 resulting in bodily injury to Mr. Adams.  That is alleged to be

18 a violation of federal law.

19          Do you understand that charge?

20          THE DEFENDANT:  Yes, sir.

21          THE COURT:  You've been over it with your lawyer?

22          THE DEFENDANT:  Yes, sir.

23          THE COURT:  Several times, I imagine?

24          THE DEFENDANT:  Yes, sir.

25          THE COURT:  And I am thinking, Mr. Jones, you probably

1  got a copy of this Information yourself already, have you not?

2         THE DEFENDANT:  Yes, sir.

3         THE COURT:  Okay.  Do you have any questions about the

4  Information itself or what the government would have to prove

5  in order to secure a conviction on a charge like that?

6         THE DEFENDANT:  No, sir.

7         THE COURT:  Now, Mr. Jones, whether or not this comes

8  up by way of indictment or by way of information you still have

9  a right to a trial on the charge.  Do you understand that?

10        THE DEFENDANT:  Yes, sir.

11        THE COURT:  Now, if you have a trial, that can be a

12 trial by jury or a trial before the Court alone.  Either way,

13 there is some important rights that you have as a defendant.

14 You do have the right to a trial by jury, as I mentioned, and

15 at any trial you have the right to the presumption of

16 innocence.  That means that you don't have to prove your

17 innocence or anything else at all.  The government is required

18 to prove you guilty beyond any reasonable doubt by competent

19 and admissible evidence and if they cannot prove you guilty,

20 then you are, so to speak, automatically innocent.

21        You have the right to be present -- physically present

22 -- in the courtroom any time anything is going on in your case.

23 You have the right to confront and cross examine all of the

24 witnesses; that is, you have the right to see and hear the

25 witnesses testify and you have the right to ask them questions

1  through your lawyer.  You have the right to subpoena witnesses

2  to the courtroom.  You have the right to be a witness if you

3  want to be a witness.  However, if you choose not to testify

4  for any reason or no reason at all, no one can suggest or infer

5  that you must be guilty simply on account of your choice not to

6  testify.

7          Do you understand all of those rights that I have told

8  you about?

9          THE DEFENDANT:  Yes, sir.

10          THE COURT:  Do you have any questions at all about

11  that?

12          THE DEFENDANT:  No, sir.

13          THE COURT:  Now there is another right that I mention

14  separately because it's important not only at trial but also

15  here today and that is your Fifth Amendment privilege, your

16  right to refuse or decline to answer any question if the answer

17  to that question might tend to incriminate you.  Do you

18  understand that right?

19          THE DEFENDANT:  Yes, sir.

20          THE COURT:  Now I am told and I have a Plea Agreement

21  before me that indicates that you want to plead guilty and I

22  want you to understand that you can plead not guilty or you can

23  plead guilty.  It's entirely up to you.  If you plead not

24  guilty, we'll have the trial that I spoke to you about.  If you

25  plead guilty, that will result in a waiver or surrender of all

1   of the rights that we discussed.  If you plead guilty, you will

2   be adjudged guilty.  You will be found guilty and a judgment of

3   guilty will be entered in your case.

4          If you plead guilty, you will be sentenced on your

5   guilty plea and when you are sentenced the Court, your lawyer,

6   the probation office -- all of us -- will be using to one

7   degree or another the so-called Federal Sentencing Guidelines.

8   Do you know that?

9          THE DEFENDANT:  Yes, sir.

10          THE COURT:  I see the Plea Agreement and I've been

11   over it.  We will go over it again, but I want you to

12   understand that even at this point, Mr. Jones, you may plead

13   guilty or not guilty and that's what I will eventually be

14   asking you.  Do you understand that?

15          THE DEFENDANT:  Yes, sir.

16          THE COURT:  Has anyone forced you, threatened you, or

17   pressured you into pleading guilty?

18          THE DEFENDANT:  No, sir.

19          THE COURT:  You were born in this country, weren't

20   you, Mr. Jones?

21          THE DEFENDANT:  Yes, sir.

22          THE COURT:  I am going to go over the Plea Agreement

23   in a summary fashion, Mr. Jones.  What you have agreed to and

24   what the United States Attorney has agreed to is summarized in

25   this way:  You've agreed to plead guilty to the Information --

1    count one -- that we've been over.  You know and you recognize

2    and affirm that you are advised that the maximum prison term

3    for a charge like this is a term of 10 years.  The maximum fine

4    is not more than $250,000.  You could be placed on supervised

5    release for as much as three years.  Restitution could be

6    ordered by the court and there will be a special assessment in

7    the amount of $100.  Do you understand that?

8              THE DEFENDANT:  Yes, sir.

9              THE COURT:  So your obligation primarily under the

10   Plea Agreement is to plead guilty to count one of the

11   Information.  I will make some findings and determinations

12   under the Sentencing Guidelines and the government lawyer has

13   agreed that if the Court determines that you qualify for a

14   credit for acceptance of responsibility, then if it's

15   applicable the government lawyer will move for an additional

16   one-level reduction in the offense level.

17             The government lawyer has also agreed to recommend

18   that you be sentenced at the low end of the guideline range.

19   You've agreed to pay restitution for the full loss caused by

20   your criminal conduct.  You've agreed to provide full,

21   complete, candid, and truthful cooperation to the government,

22   meaning the U.S. Attorney and the agents involved, and in the

23   sole discretion of the United States Attorney they will decide

24   whether that cooperation qualifies as substantial assistance

25   which might warrant the filing of a motion for downward

1 departure or reduction in sentence.

2 You've agreed to waive the right to appeal in this

3 case on any ground.  There are some exceptions:  One, if the

4 sentence imposed went above the statutory maximum.  Another is

5 if the sentence imposed exceeded the guideline range as

6 determined by the Court at the time of sentencing or if the

7 government appealed.

8 There is another waiver and that is a waiver of any

9 right to collaterally attack or file a habeas corpus proceeding

10 with respect to the sentence or the proceedings or the guilty

11 plea.  The only exception there is if you somehow came up with

12 a habeas corpus claim of ineffective assistance of counsel.

13 You've also agreed to waive and give up any right to

14 request information about the case under the Freedom of

15 Information Act or any other federal act and you've agreed to

16 waive any protection of federal rules so that if you were later

17 allowed to withdraw your guilty plea or if you failed to go

18 through the guilty plea any statements made by you in

19 connection with the plea and any leads derived therefrom are,

20 nevertheless, admissible for any and all purposes.

21 Now, that's a summary, albeit inartful, of the Plea

22 Agreement.

23 Ms. Scanlon have missed anything?

24 MRS. SCANLON:  No, Your Honor.

25 THE COURT:  What about it, Mr. Shaefer?

1          MR. SHAEFER:  No, Your Honor.

2          THE COURT:  Well, more importantly, Mr. Jones, you're

3    the man who is involved here.  Do you understand my summary of

4    the Plea Agreement?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  Is that what you agreed to?

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  And did I miss anything?

9          THE DEFENDANT:  No, sir.

10         THE COURT:  Well, there's probably a lot more on 10

11   pages, but that's the essence of the Plea Agreement.  Are you

12   comfortable with that, Mr. Jones?

13         THE DEFENDANT:  Yes, sir.

14         THE COURT:  Any questions about your Plea Agreement?

15         THE DEFENDANT:  No, sir.

16         THE COURT:  Has anyone given you any prediction or

17   prophecy or promise with respect to what sentence would be

18   imposed in your case?

19         THE DEFENDANT:  No, sir.

20         THE COURT:  All right.  Mr. Shaefer, why don't you and

21   your client have a seat for a moment and we will get a factual

22   basis for the plea.

23         MR. SHAEFER:  Yes, sir.

24         THE COURT:  All right.  Mrs. Scanlon, you have the

25   floor.

(Farrah Rajabi-Direct by Mrs. Scanlon)                    15

1          MRS. SCANLON:  The United States calls FBI Agent

2    Farrah Rajabi.

3          Your Honor, may I approach the lectern?

4          THE COURT:  Certainly.

5       (Farrah Rajabi is duly sworn.)

6          THE CLERK:  Please state your name and occupation for

7    the record.

8          THE WITNESS:  My name is Farrah Rajabi.  It's

9    R-A-J-A-B-I and I am an FBI agent.

10                      **DIRECT EXAMINATION**

11   BY MRS. SCANLON:

12   Q   What are your duties as an FBI agent?

13   A   I investigate violations of criminal federal law --

14   anything ranging from bankruptcy fraud to crimes against

15   children to civil rights violations.

16   Q   Were you assigned to investigate an incident that occurred

17   at the Charles B. Webster Detention Center on May 7 of 2022?

18   A   Yes.

19   Q   Did you collect body camera footage of that incident?

20   A   Yes, I did.

21   Q   Did you review the footage?

22   A   I did.

23   Q   Did you conduct interviews?

24   A   Yes.

25   Q   Throughout the course of your investigation did you come

(Farrah Rajabi-Direct by Mrs. Scanlon)                16

1   across someone involved in that incident by the name of

2   Dantavion Jones?

3   A    Yes, I did.

4   Q    Was he employed at the time?

5   A    Yes, with Richmond County Sheriff's Office.

6   Q    And what did he do for the Richmond County Sheriff's

7   Office?

8   A    He was a road deputy assigned to the Crime Suppression

9   Team.

10  Q    Was Deputy Jones a sworn law enforcement officer?

11  A    Yes.

12  Q    Was he on duty on May 7 of 2022?

13  A    Yes, he was.

14  Q    How do you know that?

15  A    In reviewing the body camera video other individuals who

16  are present identified him and I also spoke with Mr. Jones

17  several weeks ago and he identified himself in the video as

18  well.

19  Q    Did you observe him -- you indicated that you observed him

20  in the footage.  What did you see as -- well, let me back up.

21  How did May 7, 2022 -- how did Mr. Jones get involved in that?

22  What occurred?

23  A    Some inmates in the "G" pod at the Charles B. Webster

24  Detention Center flooded the pod by breaking the sprinkler

25  heads and one of the lieutenants at the jail called it out over

1  the radio as a riot and asked for assistance from road

2  deputies.  Several -- a group of deputies from the road

3  responded to the jail and there was body camera video of that

4  response.

5  Q   What did you observe Deputy Jones do in the body cam

6  footage?

7  A   The video shows a group of officers arrive outside of the

8  pod and before they go in one of the officers says to put all

9  of the inmates in the water on their face.  Deputy Jones went

10  in to the pod, went upstairs, assisted with handcuffing some of

11  the inmates -- or an inmate.  They escorted the inmates

12  downstairs and one of the inmates was placed in the water face

13  down and another -- Mr. Jones and the inmate exchanged some

14  words about -- to the effect of "If the cuffs weren't on me" --

15  the inmate stated, "If the cuffs were not on me you wouldn't be

16  doing this," and another officer overheard that and shouted,

17  "He wants his cuffs off," referring to the inmate -- Mr. Adams.

18  Yet another officer, a female, said about Mr. Adams, "He wants

19  to fight."  And then that officer attempted to remove

20  Mr. Adams' cuffs.  She was unsuccessful and Mr. Jones stepped

21  in and uncuffed Mr. Adams which allowed yet another deputy to

22  come over and punch the inmate repeatedly and place him in a

23  chokehold.

24  Q   Did those events take place in the Southern District of

25  Georgia?

(Farrah Rajabi-Direct by Mrs. Scanlon)                    18

1   A   Yes, they did.

2   Q   Okay.  Did the actions or the inactions of Deputy Jones

3   deprive the victim of the right that is secured and protected

4   by the Constitution and the laws of the United States to be

5   free from the use of unreasonable force from a law enforcement

6   officer?

7   A   Yes.

8   Q   Based on the investigation did Mr. Jones willfully exceed,

9   misuse or abuse his authority under the law?

10  A   Yes.

11  Q   In what way?

12  A   He allowed an inmate who was secure and in cuffs to be

13  uncuffed and created a volatile situation whereby the inmate

14  was then abused and placed in a chokehold, punched by another

15  inmate and Mr. Jones ---

16          THE COURT:  By another inmate?

17          THE WITNESS:  Excuse me.  By another deputy.  And

18  Mr. Jones failed to intervene.

19          MRS. SCANLON:  I have no further questions of

20  Ms. Rajabi.

21          THE COURT:  And you -- wait a minute.  Sit tight just

22  a minute.  I've got to let Mr. Shaefer ask you some questions

23  and I have one that I'll go ahead and ask.  You're telling me

24  that the video footage indicates that Mr. Jones over here was

25  involved in the removal of the restraints of the inmate?

(Farrah Rajabi-Cross by Mr. Shaefer)                    19

1          THE WITNESS:  Correct.

2          THE COURT:  Okay.  All right.

3          Mr. Shaefer, any questions for the FBI agent?

4          MR. SHAEFER:  Just a couple for clarification.

5          THE COURT:  Sure.

6                        **CROSS EXAMINATION**

7    BY MR. SHAEFER:

8    Q    Just to be clear, Mr. Jones was not observed striking the

9    inmate?

10   A    Correct.  Mr. Jones removed the cuffs from the inmate.

11   Q    And then the ---

12   A    The striking occurred after.

13   Q    Correct.  And then the basis for the charge that we're here

14   for today is his inaction.  Is that a fair assessment?

15   A    That's a fair assessment.

16   Q    That's all.  Thank you.

17          THE COURT:  Okay.  Well, thank you, Ms. Rajabi.  You

18   may stand down, if you'd like.

19          All right.  Mr. Shaefer, please bring your client,

20   Mr. Jones, back to the lectern.

21          Mr. Jones, did you hear what Special Agent Rajabi

22   said?

23          THE DEFENDANT:  Yes, sir.

24          THE COURT:  What did she say that you disagree with?

25          THE DEFENDANT:  It could have been more clarity on the

1  actual removal of the handcuffs and situation.

2          THE COURT:  Do you want to clarify it for me?

3          THE DEFENDANT:  Yes.  Yes, sir.

4          THE COURT:  You are under oath.  Please go ahead and

5  do so.

6          THE DEFENDANT:  So when me and Mr. Adams exchanged

7  words, I said -- we exchanged words and I started to walk away,

8  and then the deputy who stated "remove the handcuffs" was a

9  supervisor stating "remove the handcuffs".  Not thinking that

10 anything was going to happen, I removed the handcuffs based off

11 what the supervisor had just stated for me to -- not for me to

12 do, but -- the supervisor stated to remove the handcuffs and I

13 was following what the supervisor stated.

14         Unfortunately, when that occurred another deputy

15 assaulted Mr. Adams.  That we can all agree on.  I'm trying to

16 think of the words to put it -- the way to put it.  Had I known

17 that that was going to occur, actions would have been

18 different.  I was in a jail.  Everybody in that jail had body

19 cameras on and that jail has video footage.  There is cameras

20 in the jail.  So never would I have thought that someone would

21 just assault an inmate at the jail on camera where you're gonna

22 get in trouble.

23         So I didn't know that it was going to happen, but,

24 unfortunately, it happened, but, like I said, I only -- I

25 removed handcuffs based off of supervision saying they wanted

1   handcuffs to be removed.  I understand that on video there is a

2   female deputy yelling "he wants to fight," but that female

3   deputy had been yelling since we walked in the jail.  The

4   deputy that assaulted the inmate had been yelling since we

5   walked in the jail.  There was a lot of inmates were yelling.

6           Water was falling.  I wasn't -- I wasn't keen on, hey,

7   this is what's about to happen.  I had no clue it was about to

8   happen.  Never did I imagine something that would happen in the

9   jail.  I worked in the jail for a year.  I did two years of

10  corrections.  I didn't -- I didn't think anybody would do

11  anything like that.

12          THE COURT:  Like what?

13          THE DEFENDANT:  Like assault an inmate that we're in

14  charge of taking care of.

15          THE COURT:  Mr. Jones, you're not being charged with

16  inappropriately removing the restraints.  That is just a factor

17  involved.  You're charged with failure to do anything to stop

18  these people from punching and choke-holding this Inmate Adams.

19  Do you understand that?

20          THE DEFENDANT:  Yes, sir.

21          THE COURT:  And you've told me that you were

22  instructed by a supervisor -- someone superior to you -- to

23  remove the restraints?

24          THE DEFENDANT:  The instruction wasn't directly at me,

25  but he did say "take the handcuffs off".

1          THE COURT:  I am getting to the point of -- and it

2    happens all the time, Mr. Jones, but you got to remember you're

3    under oath.  It happens all the time that people are very

4    reluctant to come clean, if you will, when you got family

5    members in the courtroom.  You get my drift?

6          THE DEFENDANT:  Yes, sir.

7          THE COURT:  All right.  Now what you're telling me

8    makes it sound like you were just a bystander and you didn't do

9    anything and you didn't -- you just took the cuffs off because

10   you were instructed to do so -- you and the rest of the

11   crowd -- and that thereafter you had no idea that anybody would

12   start punching anybody or violating the rights of an inmate.

13   Is that what you're trying to tell me?

14         THE DEFENDANT:  As far as the inmate being assaulted,

15   yes.  Now I could have stopped the incident and that's

16   something that me and my attorney have discussed.  That's

17   something that I discussed with the U.S. Attorneys that, you

18   know, I had an opportunity to stop it and I didn't.

19         THE COURT:  Okay.  Now we're getting back on the

20   surface of the road here.  You were about to get in the ditch

21   there.  You can't plead guilty if you don't -- if you say you

22   didn't do anything wrong.  Do you understand that?

23         THE DEFENDANT:  Yes, sir.

24         THE COURT:  Did you, Mr. Jones, have an opportunity to

25   bring or at least try to stop the other officers from being on

1  Adams?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  Did you do anything to try to stop them?

4          THE DEFENDANT:  No, sir.

5          THE COURT:  As a sworn law enforcement officer you

6  knew then as you know now that you had an obligation to protect

7  an inmate under those circumstances, did you not?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  Anything else you want to say?

10          THE DEFENDANT:  No, sir.

11          THE COURT:  Okay.  Now having thought about it and

12  talked about it, Mr. Jones, how do you want to resolve this

13  case?

14          THE DEFENDANT:  I'm going to enter my plea.

15          THE COURT:  And by that you mean you want to plead

16  guilty consistent with the terms of your Plea Agreement?

17          THE DEFENDANT:  Yes, sir.

18          THE COURT:  Are you, in fact, guilty as charged?

19          THE DEFENDANT:  Yes, sir.

20          THE COURT:  In that this defendant has acknowledged

21  his guilt, he's aware of his right to trial, he knows the

22  maximum penalty, and with full knowledge of the consequences on

23  an ample factual basis he has elected to plead guilty, I will

24  allow the plea to be entered in writing.

25          THE CLERK:  Your Honor, the guilty plea has been

1  entered.

2         THE COURT:  Let it be filed.

3         Mr. Jones, you've now been convicted of this federal

4  felony offense.  You have no right to own, use or possess a

5  firearm at any time.  Do you have any firearms at home?

6         THE DEFENDANT:  No, sir.

7         THE COURT:  Or anywhere else?

8         THE DEFENDANT:  We got rid of them.

9         THE COURT:  Mr. Brown and the probation office were

10  good enough to provide a pretty good report on your conduct

11  since you were put on bond and I will allow you to remain on

12  bond under the same conditions as before.

13         THE CLERK:  He has not been put on bond before.

14         THE COURT:  Oh, I'm sorry.  Thank you.  So he is -- I

15  have the report and there's no reason not to allow him on bond

16  with the conditions that are recommended here.

17         Mr. Shaefer, I will allow this to be an unsecured

18  bond, albeit in the amount of $10,000.  The conditions will be

19  announced in the documents and I will adopt those that

20  Mr. Brownlee has recommended.

21         Some of these are obvious, but all of them are

22  important, Mr. Jones.  Listen carefully and they will be

23  articulated in other documents that you'll have to sign.  You

24  are to report as directed by the supervising officer.  You are

25  to maintain your current employment.  You are not to attempt to

1  obtain a Passport.  I understand you don't have one now.  Is

2  that right?

3            THE DEFENDANT:  No, sir.

4            THE COURT:  Okay.  You are to abide by any

5  restrictions on personal association, place of abode or travel

6  that might be imposed by the probation office and your travel

7  is restricted to the Southern District of Georgia.  If you need

8  to travel beyond the Southern District for employment or other

9  purposes, you'll have to let the probation officer know.  By

10 all means you should ---

11           MR. SHAEFER:  Your Honor, he's informed me that

12 occasionally his work does take him into South Carolina.

13           THE COURT:  Well, all you have to do is talk to the

14 probation officer about that.

15           Do you know if Mr. Brownlee is in the building,

16 Mr. Brown?

17           THE PROBATION OFFICER:  I believe he left for the day,

18 Your Honor.

19           THE COURT:  All right.  Well, if it's

20 employment-related I will tell you there will be no objection

21 to it, but I want you to get with him right away and we'll get

22 it memorialized.

23           MR. SHAEFER:  Your Honor, I believe we're working on

24 scheduling a meeting on Monday.  That has not been solidified

25 yet.

1      THE COURT:  Okay.  That's good enough.  Okay.

2      You are not to contact or be in contact with any

3 potential witness, victim or co-defendant in this

4 investigation.  Do you understand that?

5      THE DEFENDANT:  Yes, sir.

6      THE COURT:  Anybody that has anything to do with this

7 matter, you just stay away from them.  Obviously, you cannot

8 possess a firearm.  Refrain from the excessive use of alcohol

9 and I'm placing you on a curfew from 10 p.m. until 6 a.m.

10 10 p.m. until 6 a.m.

11      MR. SHAEFER:  Your Honor, he's informed me that he

12 sometimes has to leave the house around five to make it to work

13 on time at 7 a.m.

14      THE COURT:  If it is employment related and I mean

15 genuinely so, that's okay.  Any time you're working or getting

16 back and to work, that will be fine.  But no funny stuff.

17 Understand me?

18      THE DEFENDANT:  Yes, sir.

19      THE COURT:  Okay.  If you are arrested, questioned or

20 stopped -- even a traffic stop -- by any law enforcement

21 officer, you are to report that as soon as practicable to our

22 probation office.

23      Those are generally the terms of the bond and y'all

24 will prepare those documents today, Morgan?

25      THE CLERK:  Yes, sir.

1          THE COURT:  Okay.  Any questions, Mr. Jones?

2          THE DEFENDANT:  No, sir.

3          THE COURT:  All right.  Well, that concludes the

4    matter.  You must, of course, stay in touch with your lawyer

5    and abide by those conditions.  That concludes the matter.

6    We're in recess.

7        (End of Transcript of Record.)

CERTIFICATE OF REPORTER

     I, Lisa H. Davenport, Federal Official Reporter, in and
for the United States District Court for the Southern District
of Georgia, do hereby certify that pursuant to Section 753,
Title 28, United States Code that the foregoing is a true and
correct transcript of the stenographically-reported proceedings
held and that the transcript page format is in conformance with
the regulations of the Judicial Conference of the United
States.


                              _____

                              Lisa H Davenport, RPR, FCRR
                              Federal Official Reporter